UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVOLUTIONARY INTELLIGENCE, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>LIVINGSOCIAL, INC.,<br><br>　　　　　Defendant. | Case No. 13-cv-04205-WHO<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO LIFT STAY AND REOPEN LITIGATION**<br><br>Re: Dkt. No. 101 |

## INTRODUCTION

On January 17, 2014, I granted defendant Livingsocial, Inc.'s motion to stay pending *inter partes* review ("IPR") by the Patent Trial and Appeal Board ("PTAB") of the Patent & Trademark Office. Plaintiff Evolutionary Intelligence seeks to lift the stay after the PTAB declined to institute IPR over some of the claims asserted in this action. However, the PTAB did institute IPR over a significant portion of the claims asserted against Livingsocial in this action. A continued stay would therefore simplify the issues in question and promote judicial efficiency. Per Civil Local Rule 7-1(b), this motion is suitable for determination without a hearing, and I vacate the hearing set for June 18, 2014. Evolutionary Intelligence's motion is DENIED.

## BACKGROUND

Evolutionary Intelligence sued LivingSocial in October 2012, alleging infringement of Evolutionary Intelligence's '536 and '682 patents, which relate to managing and manipulating

1    data. Dkt. No. 1.  Evolutionary Intelligence also sued Apple, Facebook, Foursquare Laps,

2    Groupon, Millennial Media, Sprint Nextel, Twitter, and Yelp, alleging infringement of the same

3    patents.  In October 2013, Facebook, Yelp, Twitter, and Apple filed petitions with the PTAB

4    requesting IPR of various claims of the '536 and '682 patents, including the claims asserted in this

5    action against LivingSocial. Wytsma Decl. ¶ 2, Ex. 1 [Dkt. No. 82].  LivingSocial moved to stay

6    this infringement action pending the outcome of those petitions. Dkt. No. 82. On January 17,

7    2014, I granted the motion to stay because (i) this action is at an early stage; ( ii) a stay would

8    simplify the issues in question; and  (iii) the stay would not unduly prejudice the plaintiff.  Dkt.

9    No. 96 at 2-5.  The order also stated, "Any party may file a motion to lift the stay at any time if the

10   PTO decides not to grant any of the pending petitions."  Dkt. No. 96 at 5.

11       The PTAB issued its decisions on the petitions on April 25, 2015.  The PTAB instituted

12   IPR review of some of the claims of the '536 patent and declined to institute IPR of any of the

13   claims of the '682 patent.  Corrected Patek Decl. ¶¶ 4, 8, Exs. B, F [Dkt. No. 99].  A final written

14   decision on the IPR is expected from the PTAB by April 25, 2015.  Corrected Patek Decl. ¶ 12.

15       Evolutionary Intelligence has moved to lift the stay and reopen litigation.  In the

16   alternative, Evolutionary Intelligence seeks to sever the claims that are subject of the IPR and lift

17   the current stay with respect to the claims not under review.

## LEGAL STANDARD

19       "Courts have inherent power to manage their dockets and stay proceedings, including the

20   authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849

21   F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted).  Though a stay is never required, it can be

22   particularly useful because "[o]ne purpose of the reexamination procedure is to eliminate trial of

23   that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district

24   court with the expert view of the PTO (when a claim survives the reexamination proceeding)."

25   *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

26       "[T]he court may abandon its imposed stay of litigation if the circumstances that persuaded

27   the court to impose the stay in the first place have changed significantly." *Canady v. Erbe*

28   *Elektromedizin GmbH*, 271 F. Supp. 2d 64, 75 (D.D.C. 2002).  In determining if a stay is

appropriate, courts consider: (1) the stage and history of the litigation; (2) whether a stay would simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Id*. at 1023. "[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1381 (N.D. Cal. 1994).

**DISCUSSION**

All the relevant considerations favor keeping the stay: (i) this action is at an early stage; (ii) a stay would simplify the issues in question; and (iii) the stay would not unduly prejudice Evolutionary Intelligence.

**I.    THE EARLY STAGE OF THIS ACTION FAVORS A STAY**

The case remains in its early stages. As I noted when granting the stay on January 17, 2014, "[o]nly limited discovery has occurred in this case. No pretrial dates have been scheduled and no claim construction or other substantive briefs have been filed or scheduled." Dkt. No. 96 at 3. That remains true. The early stage of this case weighs in favor of a stay. *See, e.g.*, *Evolutionary Intelligence LLC v. Yelp Inc.*, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) (granting stay where "only limited discovery had occurred, most of it restricted to the issue of venue; no trial date a discovery deadline has been set and only limited pretrial dates have been set…."); *KLA-Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 70866, at *2 (N.D. Cal. Mar. 16, 2006) (granting stay where discovery had just begun); *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, 1995 WL 20470, at *2 (N.D. Cal. Jan. 13, 1995) (lack of significant discovery and no trial date weighed in favor of stay).

**II.   A STAY WOULD SIMPLIFY THE ISSUES IN QUESTION**

Evolutionary Intelligence alleges that LivingSocial infringes claims 1-4, 7-9, and 11-16 of the '536 patent. The PTAB has instituted IPR of all but three of those claims (claims 1, 13, and 15). Corrected Patek Decl. ¶ 8, Ex. F. As I stated in my order granting the initial stay, "[t]his case will be simplified if the PTO narrows or cancels *any* of the asserted claims, even if other claims remain in their original form." Dkt. No. 96 (emphasis in original). The PTAB's decision to

3

institute IPR of 10 of the asserted claims of the '536 patent necessarily means that there is "a reasonable likelihood" that those claims will be found unpatentable.[1] Corrected Patek Decl. ¶ 8, Ex. F at 2 (citing 35 U.S.C. § 314(a)); *see also Star Envirotech, Inc. v. Redline Detection, LLC*, 2013 WL 1716068, at *2 (C.D. Cal. Apr. 3, 2013) ("the amended standards for granting *inter partes* review probably results in an even higher likelihood than under the prior standard that the issues in this action will be simplified by the reexamination"). Even if the claims are not cancelled, they may be amended or clarified. Staying this case pending resolution of the IPR will therefore simplify the issues in question; it is of no moment that not all of the asserted claims of the '536 patent are subject to the IPR or that some of the claims subject to IPR may survive. *See, e.g., Pragmatus Telecom, LLC v. NETGEAR, Inc.*, 2013 WL 2051636, at *2 (N.D. Cal. May 14, 2013) ("a stay request is not contingent upon the reexamination proceeding being coterminous and resolving every claim and issue in this action. Rather, the salient question is whether the reexamination will aid the Court or otherwise streamline the litigation.").

Evolutionary Intelligence also alleges that LivingSocial infringes claims 1, 3-7, 10-11, 14-16, 19 and 21 of the '682 patent. Corrected Patek Decl. ¶ 11. The PTAB declined to institute IPR of those claims. In the event that I do not lift the stay, Evolutionary Intelligence requests that those claims be severed from those subject to IPR and that litigation as to those claims recommences. But the '682 patent is a continuation of the '536 patent, claiming the same invention: a "system and method for creating and manipulating information containers with dynamic registers."[2] Dkt. No. 1, Exs. A-B ('536 and '682 patents). Several claim terms are

---

[1] In addition, claims 1 and 13 of '536 patent, which are not subject to the IPR, are related to the claims that are subject to review. Claims 3-4, 7-9, and 11-12, and 14 are dependent on claims 1 and 2. Claim 13 is also dependent on claims 1 and 2. Claims 1 and 13 may therefore be clarified by the PTAB's review.

[2] In its reply, Evolutionary Intelligence contends that the patents are not directed at the same invention because "each is directed to a completely distinct invention (an *apparatus* comprised of time- and location-based information containers vs. a *method* for implementing searches), with little overlap in terminology or subject matter." Reply at 3 (emphasis in original). But as noted above, the patents have common claim terms and are both directed to a "System and method for creating and manipulating information containers with dynamic registers."

4

common to the asserted claims of both patents, including "register," "gateway," "container," and "information." These claim terms may be clarified during the IPR.[3] Litigating the patent '682 patent now and the '536 patent following resolution of the IPR would be inefficient and may result in duplication of effort. *See, e.g., Methode Elec., Inc. v. Infineon Technologies Corp.*, 2000 WL 35357130, at *3 (N.D. Cal. Aug. 7, 2000) ("Duplicative discovery may result if only the '408 patent is stayed since there are likely to be common documents and witnesses regarding the infringement litigation of the '408 and '468 patents."). Under such circumstances, staying the entire case is appropriate. *See, e.g., Sonics, Inc. v. Arteris, Inc.*, 2013 WL 503091, at *3 (N.D. Cal. Feb. 8, 2013) ("When there are overlapping issues between the reexamined patents and other non-reexamined patents-in-suit, courts have found that staying the entire case is warranted."); *KLA–Tencor Corp. v. Nanometrics, Inc.*, 2006 WL 708661, at *4 (N.D. Cal. March 16, 2006) (same); *Methode Elec.*, 2000 WL 35357130, at *3 ("granting a stay with respect to only the '408 patent would be problematic since the '468 patent involves the same accused device").

The cases cited by Evolutionary Intelligence do not support lifting the stay in this action. In *Cellectricon AB v. Fluxion Biosciences, Inc.*, 2011 WL 1557987, at *3 (N.D. Cal. Apr. 25, 2011), the court found that lifting the stay on one patent was warranted because the patent was significantly different from the other patents and it was owned by a different plaintiff. In *Tokuyama Corp. v. Vision Dynamics, LLC*, 2008 WL 4452118, at *4 (N.D. Cal. Oct. 3, 2008), the court lifted the stay in large part because the defendant alleged a counterclaim involving various antitrust violations "none of which is within the scope of the PTO." In *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 WL 1655625, at *3 (N.D. Cal. June 7, 2007), the court held that a stay pending reexamination was inappropriate since it was a four year old case in which pretrial preparation was completed and a trial had been held. None of those circumstances are

---

[3] Evolutionary Intelligence argues that the Court will not benefit from the PTAB's discussion of those terms because the PTAB already construed the terms and the PTAB applies a different standard of claim construction than the one this Court will be required to apply. Perhaps, but the point is that the asserted claims in the '536 and '682 patents are so related that the PTAB's discussion of the asserted claims of the '536 patent will almost certainly clarify the asserted claims of the '682 patent.

5

present here.

## III. MAINTAINING THE STAY WOULD NOT UNDULY PREJUDICE EVOLUTIONARY INTELLIGENCE

Evolutionary Intelligence requests that I reconsider its prior argument, which I previously rejected, that a continued stay will cause it undue prejudice because "delaying the resolution of this case effectively provides a license to LivingSocial to continue its infringement." However, "[m]ere delay, without more though, does not demonstrate undue prejudice." *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007); *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp. 2d 1107, 1111 (N.D.Cal.2006) ("[T]he likely length of reexamination is not, in itself, evidence of undue prejudice."). Evolutionary Intelligence will have an opportunity to litigate LivingSocial's alleged infringement of its patents when the PTAB provides its final decision.

Evolutionary Intelligence also repeats its argument that LivingSocial's employee turnover and weak financial position could result in loss of evidence. Evolutionary Intelligence points to a recent article for the proposition that while Livingsocial recently posted a profit, "analysts have decried that profit as 'accounting alchemy' used to hide an actual $22M loss." Corrected Mot. at 8; Corrected Patek Decl. ¶ 14, Ex. K. As it was before, this assertion is speculative. Evolutionary Intelligence does not provide specific examples of evidence or potential witnesses that may be lost. *See Evolutionary Intelligence*, 2013 WL 6672451, at *7 ("Speculative assertions that evidence may be lost as a result of a stay pending reexamination are insufficient."); *Software Rights Archive, LLC v. Facebook, Inc.*, 2013 WL 5225522, at *5 (N.D.Cal. Sept. 17, 2013) ("[Plaintiff's] assertions of prejudice based on delay alone are merely speculative. [Plaintiff] has not identified a particular expert witness who is likely to be lost, nor is the court convinced that the relevant technology or evidence thereof would become 'unavailable' for the purposes of a patent infringement analysis."). Evolutionary Intelligence's speculative assertion that a continued stay will cause loss of evidence does not warrant lifting the stay.

**CONCLUSION**

Evolutionary Intelligence's motion to lift the stay is DENIED. This case is stayed pending a final written decision from the PTAB. The parties shall file a joint status update every six months from the date of this Order and upon completion of the IPR.

**IT IS SO ORDERED**.

Dated: June 16, 2014

_____
WILLIAM H. ORRICK
United States District Judge